UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICTOR D. SMITH,

            Petitioner,

    -vs-

RICHARD D. SAVAGE, SUPERINTENDENT

            Respondent.

**DECISION AND ORDER**

**No. 06-CV-0721T**

_____

## I.    Introduction

*Pro se* petitioner Victor D. Smith ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered March 25, 2004, in New York State, County Court, Ontario County, convicting him of Driving While Intoxicated as a Felony (N.Y. Vehicle and Traffic Law ("VTL") §§ 1192[3], 1193[1][c][ii]), Criminal Mischief in the Fourth Degree (N.Y. Penal Law ("Penal Law") § 145.00[3]), and Leaving the Scene of an Incident Without Reporting (VTL § 600[1]).

For the reasons stated below, the petition is denied.

## II.   Factual Background and Procedural History

On May 8, 2003, at approximately 8:30 p.m., Petitioner stopped at a bar near Clifton Springs, New York after work.  Petitioner testified that he ordered chicken wings to go, drank two draft beers, and a shot of Southern Comfort whiskey.  After approximately

-1-

one hour at the bar, Petitioner entered his vehicle and proceeded to drive west on Route 96 towards Victor, New York. Petitioner testified that he was eating chicken wings while he was driving his vehicle. Trial Transcript [T.T.] 249-253.

Chris Pratt ("Pratt") was driving west from Clifton Springs to Fairport on Route 96 around 9:30 p.m. that same night. Pratt came upon Petitioner's vehicle as it was traveling west on Route 96, and observed Petitioner's vehicle traveling at a slow rate of speed and swerving to the left and to the right continuously. After a short time, Pratt became concerned, called 911, and trailed Petitioner for several miles while on the phone with a 911 dispatcher. Pratt read Petitioner's license plate number to the 911 dispatcher, and followed Petitioner's vehicle for several more miles until he lost sight of it. T.T. 79-82.

Meanwhile, Megan Tobin ("Tobin") and her friend Abigail Koehler ("Koehler") were traveling east on Route 96 at approximately 9:55 p.m. that same night. As Tobin's vehicle entered the intersection of Route 96 and County Road 28, Petitioner, without signaling, suddenly pulled in front of Tobin's vehicle, making a hard left hand turn into the intersection. Tobin swerved left in an unsuccessful attempt to avoid hitting Petitioner's vehicle. The front end of Tobin's vehicle hit the rear passenger side of Petitioner's vehicle, totaling Tobin's vehicle. Neither of the women were injured. After the crash,

Petitioner sped away south on County Road 28, leaving Tobin and Koehler stranded by the side of the road. T.T. 41-47.

Deputy Holland ("Holland") received a transmission from dispatch at approximately 9:58 p.m. that same night that there was a possible sick or intoxicated driver on Route 96, and was given the plate number that Pratt had given the 911 operator earlier that evening. The plate number was later found to match the plate on Petitioner's vehicle. While on Route 96, Holland came upon Tobin's wrecked vehicle, stopped to ensure that Tobin and Koehler were uninjured, and then pursued Petitioner south on County Road 28. Approximately five miles down the road, Holland came upon Petitioner's vehicle and observed Petitioner driving the vehicle with its bumper dragging, swerving back and forth across the center line. T.T. 102-106.

Holland pulled Petitioner over and walked up to the vehicle. Petitioner indicated to Holland that he left the scene of the accident because he was scared. Holland detected an odor of alcohol on Petitioner's breath, and observed that Petitioner's eyes were glassy and that his speech was slurred. When Holland asked him if he had been drinking, Petitioner stated, "not that much," and when Holland pressed Petitioner as to how much he had to drink that night, Petitioner stated, "I don't think I should answer that." T.T. 109-110.

Holland then asked Petitioner to perform four field sobriety

tests, all of which Petitioner failed.  T.T. 110-122.  The sobriety
tests were performed in front of Trooper Larry Wolkonowski
("Wolkonowski") who also testified that Petitioner's eyes were
bloodshot, his speech was slurred, and he smelled of alcohol.  T.T.
115, 166.  Following the sobriety tests, Holland arrested
Petitioner for Driving While Intoxicated, Mirandized him, and read
him standard DWI warnings.  Petitioner agreed to take a breath
chemical analysis test ("breath test").  T.T. 123.

Holland then transported Petitioner to the Sheriff's office
located in Canandaigua.  T.T. 124.  Deputy Floyd Cooley ("Cooley")
was waiting at the Sheriff's office to administer the breath test.
Cooley prepared the breath test and asked Petitioner if he would
take it.  T.T. 210.  Petitioner stated that he would not take the
test because "he hit his head during the accident and he didn't
know what [he] was saying."  T.T. 210-211.  Cooley then called for
Holland who was planning on observing the administration of the
breath test, but had not yet entered the room.  T.T. 211.  Upon
entering the room, Holland asked Petitioner if he was going to take
the test, and again Petitioner indicated he was not.  T.T. 127.
Holland then asked Petitioner if he was refusing to take the test
because he had been drinking and he had hit his head, to which
Petitioner answered in the affirmative, but stated that he was not
"sauced or nothing."  T.T. 127. Holland then reminded Petitioner
that Petitioner had told Holland at the scene that he was not

injured.  Petitioner again stated that he was not going to take the test, at which point Holland re-read Petitioner the standard DWI warnings.  T.T. 128.

Prior to trial, a combined probable cause/<u>Huntley</u> hearing was held on October 31, 2003, at which Holland testified for the People.  The trial court determined that Petitioner's arrest was lawful.  It also suppressed Petitioner's statement to Cooley -- that he would not take the breath test because he had hit his head in the accident -- insomuch as Holland, the People's only witness at the hearing, was not present when the statement was made.  The Court found that the remainder of Petitioner's statements to Holland, as well as evidence of Petitioner's refusal to take the breath test, were admissible.  Hearing Minutes [H.M.] of 10/31/03, 41-44.

Shortly after the combined probable cause/<u>Huntley</u> hearing, Petitioner moved the court for new counsel.  The court granted Petitioner's motion.[1]  H.M. of 11/14/02, 5.

On January 7, 2004, the People moved for reargument of Petitioner's <u>Huntley</u> motion on the ground that the court had improperly suppressed Petitioner's statement to Cooley.  In the

---

[1]     The county court granted Petitioner's motion, but indicated that doing so was no reflection of his attorney's professional abilities.  Judge Frederick G. Reed, Jr. stated, for the record, that: "I have worked with [Victor] Berger for many years.  I know him personally.  He's a very, very competent, very intelligent attorney, very aggressive attorney.  This motion being granted is no reflection on his abilities because . . . he's doing everything necessary and proper and appropriate . . . ."  H.M. of 11/14/02, 5.

alternative, the People requested that the court reopen said hearing to allow Cooley to testify. The court granted the People's request without objection from the defense, and a second hearing was held on February 11, 2004, at which Cooley testified. The Court found that Petitioner's statement to Cooley was admissible. H.M. of 02/11/04, 32.

On March 22 and 23, 2003, the county court conducted a jury trial on the charges of Driving While Intoxicated as a Felony and Criminal Mischief in the Fourth Degree, and a non-jury trial on the charge of Leaving the Scene of an Incident Without Reporting. Petitioner was found guilty as charged. He was sentenced to an indeterminate term of imprisonment of two and one-third to seven years on the Driving While Intoxicated as a Felony charge, a concurrent determinate term of imprisonment of one year on the Criminal Mischief in the Fourth Degree charge, and a concurrent determinate term of incarceration of fifteen days on the charge of Leaving the Scene of an Incident Without Reporting. The court also fined Petitioner $7,500, imposed a $210 surcharge, and revoked Petitioner's drivers license for a period of one year. Sentencing Minutes [S.M.] 30-31.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on December 22, 2005. People v. Smith, 24 A.D.3d 1286 (4th Dep't. 2005). Leave to appeal to the New York Court of

Appeals was denied on March 24, 2006. <u>People v. Smith</u>, 6 N.Y.3d 838 (N.Y. 2006).

Petitioner petitioned the U.S. Supreme Court for a writ of certiorari, which was denied on October 2, 2006. <u>Smith v. New York</u>, 549 U.S. 844 (2006).

No collateral motions were filed.

This habeas corpus petition followed.

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as

determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see</u>

also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.    Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

### C.    The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas

review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." <u>Id.</u> (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995); <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" <u>Dunham</u>, 313 F.3d at 729 (quoting <u>Lambrix v. Singletary</u>, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" <u>id.</u> (quoting <u>Lambrix</u>, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

**IV.  Petitioner's Claims**

**1.  INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner contends that he was denied the effective assistance of counsel because, at the first <u>Huntley</u> hearing, counsel improperly questioned Holland on cross-examination about the <u>Miranda</u> warnings and, as a result, established that the warnings had been given.  Petition [Pet.] ¶22A;  Petitioner's Memorandum of Law [Mem.], Point One.  Petitioner raised this claim on direct appeal, and it was rejected on the merits.[2]

It is well-settled that a petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984);  <u>Aparicio</u>, 269 F.3d at 95.  A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  <u>Id.</u> at 689 (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955));  <u>see</u> <u>also</u>, <u>e.g.</u>, <u>United States v. Jones</u>, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's

---

[2]    The Appellate Division found that:  "[d]efendant failed to demonstrate the absence of strategic or other legitimate explanations for defense counsel's questioning of a witness at [the <u>Huntley</u> hearing] concerning the <u>Miranda</u> warnings administered to defendant."  <u>Smith</u>, 24 A.D.3d at 1286.

decisions should not be evaluated in hindsight). Moreover, decisions whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature, and, if reasonably made, will not constitute a basis for an ineffective assistance claim. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

In this case, Petitioner cannot meet either prong of Strickland. First, he has failed to show how counsel's decision to question Holland about whether he administered Miranda warnings to Petitioner was unreasonable. The record reflects that, on direct examination, Holland testified about his training and experience as a police officer, and his ability to recognize intoxication. He also testified extensively about the way in which he had administered the four field sobriety tests to Petitioner, and the way in which Petitioner failed all four tests. Additionally, he testified, in great detail, about how he twice delivered warnings to Petitioner about the consequences of refusing a breath test. Oddly, however, the prosecution did not question Holland about whether or not he had administered Miranda warnings to Petitioner. H.M. of 10/31/03, 6-24. It was within this context that Petitioner's counsel, on cross-examination, specifically asked

Holland if he had administered _Miranda_ warnings to Petitioner. H.M. of 10/31/03, 27-31. Petitioner contends that counsel acted with no "legitimate strategy in mind" when he did so, and that such questions "ruin[ed] [his] argument for suppression" insomuch as the line of questioning "established that [he] had been read his _Miranda_ rights." Mem., Page 5. The Court disagrees. Given the circumstances, counsel's decision to question Holland was a strategic way for him to assess the strengths of the People's case and to begin to develop possible defenses. Based on the fact that the People did not ask Holland on direct examination whether he _Mirandized_ Petitioner, it was reasonable for counsel to suspect that the People's proof on the subject was lacking. By specifically asking whether Holland _Mirandized_ Petitioner, counsel sought to develop a reasonable doubt as to the voluntary nature of Petitioner's statements to police.

Furthermore, in reviewing the record, the Court notes that Petitioner's subsequent counsel, David Morabito, Esq. ("Morabito"), employed the same line of questioning on his cross-examination of Holland at the second _Huntley_ hearing. H.M. of 02/11/04, 21-22. Curiously, however, Petitioner does not take issue with Morabito's performance. To that extent, the Court finds Petitioner's claim rather disingenuous.

Petitioner also cannot meet the second prong of _Strickland_ by showing that, but for counsel's alleged error, the outcome of the

trial would have been different.  Petitioner offers only a blanket assertion, with no supporting facts, that counsel's performance "ultimately damaged [him]."  Mem., Page 5.  The Court finds this argument unconvincing given that the evidence against Petitioner was overwhelming: Pratt's 911 call reporting Petitioner's erratic and dangerous driving; compelling testimony from Tobin and Koehler about how Petitioner totaled Tobin's vehicle, and then left the scene of the incident;  Holland's testimony that Petitioner was driving a damaged vehicle, in a reckless manner, shortly after the collision; Petitioner's non-custodial admissions that he had consumed alcohol before driving and that he did not think he should answer Holland when Holland asked him what he had been drinking; evidence of Petitioner's slurred speech, disheveled clothing, glassy and bloodshot eyes, and inability to exit his vehicle without assistance;  testimony from Holland, Cooley, and Wolkonowski that Petitioner emitted a strong odor of alcohol; evidence that Petitioner failed four field sobriety tests; and Petitioner's own testimony that he consumed two beers and a shot of whiskey before driving, and that he was driving recklessly on the night of the incident while eating chicken wings.

Accordingly, the Court cannot find that the state court's determination of this issue was contrary to or an unreasonable application of settled Supreme Court law.  The claim is dismissed.

## 2.   REOPENING OF **HUNTLEY** HEARING

Petitioner contends that the county court abused its discretion in reopening the Huntley hearing to permit the People to allow Cooley to testify to Petitioner's statement that Petitioner was withdrawing his consent to take the breath test because he had hit his head during the accident and did not know what Cooley was saying.   Pet. ¶22B; Mem., Point Two.   Petitioner's claim was properly exhausted in the state court, but does not present an issue that is cognizable by this Court on habeas review.   In any event, the claim lacks merit.

Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Here, Petitioner does not challenge the voluntariness of his statement to Cooley.   Nor does he contend that he was denied his constitutional right to a hearing to ascertain the voluntariness of his statements to police.   Rather, he merely contends that the

state court improperly reopened the suppression hearing thereby allowing Cooley to testify to what Petitioner said to him regarding why he would not take the breath test. In his habeas petition, Petitioner characterizes this claim as a "due process" violation; however, in his Memorandum of Law, he relies on New York law[3] to argue that a <u>Huntley</u> hearing should not be reopened in any case where a defendant clearly identified the grounds for suppression in his motion papers, and the hearing court already had decided the motion. Mem., Page 6. Such a claim, which implicates no federal constitutional right, is a matter of state law and is thus not cognizable on federal habeas review. <u>See</u> <u>id.</u> at 67-68; <u>see e.g.</u>, <u>Tirado v. Walsh</u>, 168 F.Supp.2d 162, 170-71 (S.D.N.Y. 2001) (finding that Petitioner's claim that trial court improperly reopened suppression hearing, although presented to habeas court as federal constitutional violation, is matter of state law and therefore not cognizable on habeas review).

In any event, the claim lacks merit. Under New York law, it is within the trial court's discretion to reopen a suppression hearing, and there is no prohibition to a reopening on request of the prosecution. <u>See</u> <u>People v. Mercado</u>, 62 N.Y.2d 866 (N.Y. 1984);

---

[3] Petitioner's claim necessarily implicates CPL § 710.60[1], which provides that: "[a] motion to suppress evidence made before trial must be in writing and upon reasonable notice to the people and with opportunity to be heard. The motion papers must state the ground or grounds of the motion and must contain sworn allegations of fact, whether of the defendant or of another person or persons, supporting each ground. Such allegations may be based upon personal knowledge of the deponent or upon information and belief, provided that in the latter event the sources of such information and the grounds of such belief are stated [sic]."

People v. Harrington, 193 A.D.2d 756 (2d Dep't. 1993), leave to appeal denied, 82 N.Y.2d 754 (N.Y. 1993). In exercising this discretion, the trial court should consider factors such as the timing of and the basis for the motion. See People v. Hernandez, 124 A.D.2d 893 (1986).

In this case, Petitioner claimed that the prosecution had no justification to reopen the suppression hearing because his omnibus motion was sufficient to have alerted the prosecution as to the specific grounds upon which he sought suppression of his statements.[4] As the Appellate Division held, however, "County Court did not abuse its discretion in granting the People's request to reopen the Huntley hearing in order to address the contention of defendant, raised for the first time at the original Huntley hearing, that he had asserted his right to counsel and had not waived his Miranda rights." Thus, the decision of the state court, as affirmed by the Appellate Division, to reopen the hearing and hear the testimony of Cooley -- the person to whom the statement was made -- was an appropriate exercise of its discretion. See Estelle, 502 U.S. at 62.

*Assuming arguendo*, that the state court's decision to reopen

_____

[4] In their request to either reargue the motion or reopen the Huntley hearing, the People asserted that Petitioner had supplied a "boiler-plate" Omnibus Motion packet that made only "a vague conclusory statement" that Petitioner's statement was taken in violation of his Miranda rights, and did not specifically allege that he had asserted his right to counsel. See Assistant District Attorney James Ritts's Letter of 11/17/03. The People argued that because Petitioner had not pled the assertion of his right to counsel in his moving papers, they had not produced Cooley as a witness at the Huntley hearing to controvert the assertion. Id.; H.M. of 01/07/04, 3-6.

the <u>Huntley</u> hearing and to admit Petitioner's statement to Cooley was made in error, such an error is harmless insomuch as the statement was not particularly incriminating and the evidence of Petitioner's guilt was overwhelming. Under these circumstances, it is unlikely that the jury would have rendered a different verdict had Petitioner's statement not been admitted. See <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993) (holding that constitutional error of the trial type is harmless in habeas context when it does not have "a substantial and injurious effect or influence in determining the jury's verdict") (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)).

The claim is dismissed.

### 3. DENIAL OF JURY TRIAL ON CHARGE OF LEAVING THE SCENE OF AN INCIDENT WITHOUT REPORTING

Petitioner contends that his constitutional right to a trial by jury was violated when the trial court conducted a non-jury trial on the count of Leaving the Scene of an Incident Without Reporting. Pet. ¶22B; Mem., Point Three. Petitioner raised this claim on direct appeal, and it was rejected on the merits.

The Supreme Court has long held that the right to a jury trial on a criminal charge, although stated in absolute terms in the Sixth Amendment, does not extend to what the Court refers to as "petty offenses." <u>See, e.g.</u>, <u>Baldwin v. New York</u>, 399 U.S. 66, 68, n.5 (1970) (plurality opinion) (citing cases); <u>Duncan v. Louisiana</u>, 391 U.S. 145, 159 (1968), <u>accord, e.g.</u>, <u>Blanton v. City</u>

of North Las Vegas, Nevada, 489 U.S. 538, 541 (1989); Frank v. United States, 395 U.S. 147, 150-51 (1969).  A "petty offense" is one for which "the accused cannot possibly face more than six months' imprisonment."  Baldwin, 399 U.S. at 73; accord Blanton, 489 U.S. at 541.

Here, Petitioner was charged with Leaving the Scene of an Incident Without Reporting, which is a "traffic infraction punishable by a fine of up to two hundred fifty dollars or a sentence of imprisonment for up to fifteen days or both."  VTL § 600(1).  Because the county court could not sentence Petitioner to more than six months imprisonment for the offense, the Appellate Division's determination that Petitioner was not entitled to a jury trial on the charge is consistent with and does not contravene settled Supreme Court law.

Accordingly, the claim is dismissed.

**4.   COMPELLED PRODUCTION OF PETITIONER'S NOTES AT TRIAL**

Petitioner contends that the trial court compelled him to be a witness against himself when it directed him to produce certain personal notes that he intended to use on the witness stand to refresh his recollection.   Pet.  ¶22C; Mem., Point Three. Petitioner raised this claim on direct appeal, and it was rejected on the merits.

In the habeas petition, Petitioner characterizes this claim as a constitutional deprivation of his Fifth Amendment privilege

against self-incrimination. However, in his Memorandum of Law, he contends that the county court's order to disclose his own statements to the prosecutor before he took the stand was violative of CPL § 240.45(2)(a). This section of the CPL requires that a defendant disclose to the prosecutor "any written or recorded statement made by a person other than the defendant whom the defendant intends to call as a witness at the trial, and which relates to the subject matter of the witness's testimony." CPL § 240.45(2)(a). As discussed under "Section IV, 2" above, a petitioner may only obtain habeas relief for a violation of a federal constitutional right. Petitioner's claim, which alleges a violation of New York's pre-trial discovery statute, is a matter of state law. Whether the trial court violated CPL § 240.34(2)(a) in ordering Petitioner to disclose his *own* statements to the prosecutor does not present a federal question for which habeas relief is available. See <u>Estelle</u>, 502 U.S. at 67-68.

In any event, *assuming arguendo*, that the trial court's order was violative of CPL § 240.45(2)(a), such error was harmless in so much as the jury never saw Petitioner's notes, nor were the notes the subject of any direct or cross-examination. See <u>Brecht</u>, 507 U.S. at 637-38. Additionally, as discussed under "Section IV, 1" above, the evidence of Petitioner's guilt was overwhelming.

Accordingly, the claim is dismissed.

5.    **PROSECUTORIAL MISCONDUCT**

Petitioner contends that the prosecutor made improper remarks throughout the trial, and violated the county court's Sandoval[5] ruling.  Pet. ¶22D;  Mem., Point Five.  Petitioner raised this claim on direct appeal, and the Appellate Division rejected it on state procedural grounds.  Smith, 24 A.D.3d at 1287.  The Appellate Division's reliance upon a state procedural rule to dismiss Petitioner's claim precludes federal habeas review of it.  See Coleman, 501 U.S. at 729-30; Harris v. Reed, 489 U.S. 255, 260-61 (1989).

A habeas court may not review a federal issue when the last state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment."  Coleman, 501 U.S. 722 at 729.  It is well-settled law that New York's contemporaneous objection rule (codified at CPL § 470.05(2)) is an independent and adequate state procedural ground.  See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999).  Here, the Appellate Division relied on CPL § 470.05(2) to find that Petitioner failed to properly preserve his prosecutorial misconduct claim.  This finding demonstrates that the state court's decision

---

[5]    People v. Sandoval, 34 N.Y.2d 371 (1974) (admissibility of prior convictions or proof of prior commission of specific criminal, vicious or immoral acts to impeach defendant's credibility).  The county court conducted a Sandoval hearing, in chambers, on March 22, 2003.  At that hearing, the court determined that it would allow the People to question Petitioner about five prior bad acts, and precluded twenty-six others.  T.T. 14-31.

on this issue rested on an adequate and independent state procedural rule that bars federal habeas review of the issue by this Court.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." <u>Coleman</u>, 501 U.S. at 749-50 (internal citations omitted); <u>accord, e.g.</u>, <u>Fama v. Commissioner of Corr. Servs.</u>, 235 F.3d 804, 809 (2d Cir. 2000). Petitioner has made no showing of cause and prejudice nor has he attempted to demonstrate that this Court's failure to review the claim will result in a miscarriage of justice. Accordingly, the claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v.</u>

United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     February 5, 2010
           Rochester, New York